UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT (DKT. 29); DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 36)**
**JS-6: Remanded**

**I.      Introduction**

Jose Manuel Garcia, Jr. and Jose Perez ("Plaintiffs") brought this action in the Los Angeles Superior Court against Owens-Brockway Glass Container, Inc. ("Defendant") asserting claims for negligence. Complaint, Dkt. 1-1. These claims arise out of the substantial injuries that each allegedly sustained while cleaning of a component of the Defendant's manufacturing facility. Defendant removed the action on March 18, 2016. Dkt. 1.[1] On June 27, 2016, a Scheduling Conference was held, and the last day to amend or add parties was set for August 1, 2016. Dkt. 17. On December 15, 2016, Plaintiffs filed a First Amended Complaint ("FAC"). Dkt. 20. This complaint was subsequently withdrawn, and on January 12, 2017, Plaintiffs filed a Motion for Leave to file a First Amended Complaint. Dkt. 26. This motion was also withdrawn. Dkt. 28. On January 16, 2017, Plaintiffs filed a second Motion for Leave File a First Amended Complaint ("Motion for Leave to Amend"). Dkt. 29. Plaintiffs sought leave to amend the Complaint to add as a defendant USA Waste Management of California, dba Enviroserv ("Enviroserv"). *Id.* Defendant opposed the motion ("Defendant's Opposition," (Dkt. 33)), and Plaintiff replied ("Plaintiff's Reply"). Dkt. 35.

On March 8, 2017, Defendant filed a Motion for Summary Judgment ("Motion for Summary Judgment"). Dkt. 36. Plaintiffs opposed it ("Plaintiff's Opposition" (Dkt. 42)), and Defendant replied ("Defendant's Reply"). Dkt. 43. A hearing on the Motion for Leave to Amend was held on March 27, 2017. Dkt. 38. At that hearing, the Court stated that it would defer ruling on that motion until at least the time of the hearing on the Motion for Summary Judgment. *Id.* That hearing took place on June 5, 2017. Dkt. 49. At the conclusion of the hearing, both motions were taken under submission.

For the reasons stated in this Order, the Motion for Summary Judgment is **DENIED IN PART**, and the

---

[1] The Complaint names Owens-Illinois, Inc. as the Defendant. Dkt. 1-1. Defendant states in the Notice of Removal that this designation is an error. Dkt. 1. Plaintiffs have continued to refer to Defendant as "Owens-Illinois, Inc." For clarity, this Order refers to Owens Brockway Glass Container/Owens-Illinois as "Defendant."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

Motion for Leave to Amend is **GRANTED**.

## II. Background

### A. Factual Background

Defendant, a manufacturer of glassware, hired Enviroserv to clean the reaction chamber at its Vernon, California facility. Defendant's Statement of Uncontroverted Facts ("SUF"), Dkt. 36-2 at ¶ 1 (citing Declaration of Ernesto Navarro ("Navarro Decl."), Dkt. 36-3 at ¶¶ 6-7; Declaration of Deyon Marcello ("Marcello Decl."), Dkt. 36-4 at ¶ 2; Ex. A to Declaration of Anita Luitel ("Luitel Decl."), Dkt. 36-5 (e-mails between Defendant and Enviroserv) at 4-6; *id.* Ex. B (proposal of Enviroserv) at 7-8)). The reaction chamber is a component of the exhaust system of Defendant. Navarro Decl., Dkt. 36-2 at ¶ 1. Its purpose is to scrub sulfur compounds from the gas emissions that result from manufacturing glass. Defendant's SUF, Dkt. 36-2 at ¶ 5 (citing Navarro Decl., Dkt. 36-2 at ¶¶ 2-4; *id.* Ex. A (Operating and Maintenance Procedures, $SO_2$ Dry Scrubber System) at 8-22). The reaction chamber includes ductwork. *Id.* at ¶ 7 (citing Ex. A to Navarro Decl., Dkt. 36-2).

The scrubbing in the reaction chamber is effected by the release of trona particles into where the contaminated gas has been captured. *Id.* at ¶ 5 (citing Navarro Decl., Dkt. 36-2 at ¶¶ 2-4; *id.* Ex. A (Operating and Maintenance Procedures, $SO_2$ Dry Scrubber System) at 8-22). Trona is a naturally occurring mineral that is commonly used in the gas scrubbing process. Navarro Decl., Dkt. 36-3 at ¶ 3. The trona particles react with the sulfur compounds in the gas and are subsequently removed by electrostatic precipitators ("ESPs"). Defendant's SUF, Dkt. 36-2 at ¶ 5 (citing Navarro Decl., Dkt. 36-3 at ¶¶ 2-4; *id.* Ex. A (Operating and Maintenance Procedures, $SO_2$ Dry Scrubber System) at 8-22). Above the reaction chamber, a horizontal portion of ductwork (the "Horizontal") connects to the inlet chute that leads down into the upper section of the reaction chamber. Navarro Decl., Dkt. 36-3 at ¶ 5. A vertical outlet chute (the "Vertical") leads out of the lower section of the reaction chamber and connects it to the ESPs. *Id.*

The reaction chamber has sonic horns that are used to loosen any dust that has become attached to the sides of the chamber. Further Declaration of Ernesto Navarro ("Second Navarro Decl."), Dkt. 43-3 at ¶ 2. These sonic horns sound approximately once every five to ten minutes. Further Declaration of Deyon Marcello ("Second Marcello Decl."), Dkt. 43-4 at ¶ 2. They function by creating a vibration that dislodges the dust. Second Navarro Decl., Dkt. 43-3 at ¶ 2. They "are more of a vibration than a sound." *Id.* at ¶ 11.

Over time, excess trona particles build up in the reaction chamber and must be removed. Defendant's SUF, Dkt. 36-2 at ¶ 8 (citing Navarro Decl., Dkt. 36-2 at ¶¶ 6-7). Enviroserv subcontracted with SB Industrial Vacuum Services, Inc. ("SB Industrial") to perform this cleaning of the reaction chamber. *Id.* at ¶ 2 (citing Navarro Decl., Dkt. 36-2 at ¶ 8).

Both Plaintiffs were employees of SB Industrial. *Id.* at ¶ 3. (citing Navarro Decl., Dkt. 36-2 at ¶ 8; Ex. B to Declaration of Lance Cidre ("Cidre Decl."), Dkt. 36-6 (Deposition of Jose Perez ("Perez Depo.") at 40:3-23); *id.* Ex. C (Deposition of Plaintiff Jose Garcia, Vol. I ("Garcia Depo. I") at 71:25- 72:23)). Each is a laborer who has had limited formal education. Plaintiffs' Separate Statement of Undisputed Facts ("SSUF"), Dkt. 42-1 ¶ 1 (citing Ex. A to Declaration of Joseph Farzam ("Farzam Decl."), Dkt. 42-6 (Garcia

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

Depo. I) at 24:1-25; 26:17-23). Garcia went to high school and is currently working on his GED. Ex. A to Farzam Decl., Dkt. 42-6 (Garcia Depo. I) at 24:13-25:23). Perez has limited English language skills. Plaintiffs' SSUF, Dkt. 42-1 at ¶ 4 (citing Ex. B to Farzam Decl., Dkt. 42-7 (Perez Depo.), 122:16-18; 125:20-129:3; 141:12-19). Garcia believed that he was cleaning an oven, not a reaction chamber at the time of the incident at issue in this action. *Id.*

Defendant and Enviroserv entered a contract pursuant to which the cleaning would be performed. It is titled "Agreement for Environmental Services" ("Agreement"). *Id.* at ¶ 10 (citing Ex. C to Luitel Decl., Dkt. 36-5 (Agreement for Environmental Services) at 9-21). The Agreement includes the following provision:

> Contractor shall provide all labor, materials, tools, equipment, supervision and subcontracted items necessary for the performance of the Work specified in this Agreement . . . Contractor represents and warrants that its employees, and any other personnel and subcontractors that Contractor provides, are fully qualified, properly trained, and certified or licensed to perform the anticipated scope of Work, and for any Work that involves the . . . handling of hazardous materials or hazardous wastes, such persons are properly trained in procedures to work safely with and perform all services relating to the handling of such materials.

Ex. C to Luitel Decl. Dkt. 36-5 at 6-7.

The Agreement also provides:

> While performing services under this Agreement, Contractor agrees to exercise the degree of care and skill ordinarily exercised under similar circumstances by competent and reputable consultants and members in good standing of the environmental engineering, contracting, consulting and testing professions while performing the types of services to be performed hereunder. Contractor agrees to perform the Work hereunder and shall cause its employees to perform such Work in a safe manner.

*Id.* at 7.

A later term of the Agreement states:

> Contractor agrees to perform all Work under this Agreement, and Contractor shall cause all of its subcontractors to perform all Work under this Agreement, in compliance with all Applicable Laws and Environmental Laws. Without limiting the generality of the foregoing, Contractor shall specifically comply, and cause all of its subcontractors to comply with OSHA and EPA rules and regulations, including General Industry (29 C.F.R. 1910.1001 Appendix A1), Construction (29 C.F.R. 1926.58 Appendix A2) and the National Emissions Standards for Hazardous Air Pollutants "NESHAP" (40 C.F.R. Part 61) as well as other local, state, provincial or regional laws and regulations

*Id.*

In connection with the cleaning, Defendant provided Enviroserv with a form titled Confined Space Entry Permit. It required that a supervisor of Defendant complete elements of this permit prior to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

commencement of the cleaning of the reaction chamber. Defendant's SUF, Dkt. 36-2 at ¶ 17 (citing Ex. F to Navarro Decl., Dkt. 36-3 (Confined Space Entry Permit) at 51-52. The permit required that the supervisor evaluate hazards and assess the equipment needed for the cleaning. *Id.* at ¶ 18 (Ex. F to Navarro Decl., Dkt. 36-3 (Confined Space Entry Permit) at 51-52). The permit was completed by Brian Banuelos, an employee of Enviroserv. *Id.* at ¶ 19 (citing Navarro Decl., Dkt. 36-3 at ¶¶ 9, 11; *id.* Ex. F (Confined Space Entry Permit) at 51-52; Marcello Decl., Dkt. 36-4 at ¶ 3). Perez testified that Banuelos was responsible to direct the job on the day of the cleaning that is at issue. Ex. B to Cidre Decl., Dkt. 36-6 (Perez Depo.) at 40:11-21. However, he also testified that Banuelos was only present when he needed to "do the paper." Ex. B to Farzam Decl., Dkt. 42-7 (Perez Depo.) at 127:9-25.

Two days before the incident at issue in this action, Defendant prepared the site in its customary fashion. Defendant's SUF, Dkt. 36-3 at ¶ 21 (citing Navarro Decl., Dkt. 36-3 at ¶ 10; Marcello Decl., Dkt. 36-4 at ¶¶ 5-6; Ex. C to Cidre Decl., Dkt. 36-6 (Garcia Depo. I) at 112:2-5, 132:19-21). This included: placing the scrubbing system on bypass so that neither trona nor gas would flow through the reaction chamber; locking the system control panel to prevent the bypass from being moved and the sonic horns from sounding; locking the separate sonic horn controls; and opening the doors to the reaction chamber and the Vertical to allow the air and materials inside to cool. *Id.*

The day before the incident, Plaintiffs and Banuelos were onsite at the Vernon facility in connection with a separate project. Defendant's SUF, Dkt. 36-2 at ¶ 23 (citing Marcello Decl., Dkt. 36-4 at ¶ 4; Ex. B to Cidre Decl., Dkt. 36-6 (Perez Depo). at 133:25-134:22, 137:5-23, 141:3-15; *id.* Ex. C (Garcia Depo. I) at 102:1-103:2, 152:19-23). This project also involved handling trona. *Id.* At that time, Plaintiffs wore personal protective gear, like all visitors to the Vernon facility. Plaintiffs' SSUF, Dkt. 42-1 at ¶ 9 (citing Ex. B to Farzam Decl., Dkt. 42-7 (Perez Depo.) at 153:16-154:7). This protective gear included full-face respirators, Tyvek suits, steel-toed shoes, construction helmets, earplugs and gloves. *Id.*

On January 22, 2016, Deyon Marcello, who is an employee of Defendant, conducted a walkthrough with Banuelos of the area to be serviced. They observed that all of the preparatory actions for the cleaning had been completed. Defendant's SUF, Dkt. 36-2 at ¶ 24 (citing Marcello Decl., Dkt. 36-4 at ¶ 6). Before work on the reaction chamber started, Marcello and his supervisor, Ernie Navarro, discussed with Banuelos the scope of the work to be performed. *Id.* at ¶ 25 (citing Navarro Decl., Dkt. 36-3 at ¶ 9; Marcello Decl., Dkt. 36-4 at ¶ 7). During this conversation, Navarro and Marcello recommended that the Vertical be vacuumed from the top down. *Id.*

Defendant states that Banuelos directed Plaintiffs to start work. *Id.* at ¶ 26 (citing Ex. B to Cidre Decl., Dkt. 36-6 (Perez Depo.) at 132:2-14, 150:8-13); *id.* Ex. C (Garcia Depo. I) at 113:16-21). Both Plaintiffs previously had cleaned this same reaction chamber. *Id.* at ¶ 28 (Ex. B to Cidre Decl., Dkt. 36-6 (Perez Depo.) at 121:23-122:9, 123:5- 124:13; *id.* Ex. C (Garcia Depo. I) at 101:15-102:1, 111:19-24, 140:4-9). Defendant states that Plaintiffs had no contact with any personnel of Defendant with respect to the work that they were to perform. *Id.* at ¶ 27 (citing Navarro Decl., Dkt. 36-3 at ¶ 12; Marcello Decl., Dkt. 36-4 at ¶ 9; Ex. B to Cidre Decl., Dkt. 36-6 (Perez Depo.) at 149:24-150:7, 155:5-11; *id.* Ex. C (Garcia Depo. I) at 141:1-8, 141:12-18, 172:6-8).

Plaintiffs state that Banuelos was not present during all of the work they performed. Plaintiffs' SSUF, Dkt. 42-1 at ¶ 26 (citing Ex. B to Farzam Decl., Dkt. 42-7 (Garcia Depo.) at 181:8-182:2). They also state that both Navarro and Marcello were at the worksite at the time of the cleaning. *Id.* at ¶ 28 (citing Ex. E to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

Farzam Decl., Dkt. 42-10 (Navarro Depo.) at 142:8-144:1; *id.* Ex. F, Dkt. 42-11 (Marcello Depo.) at 49:10-50:4). Navarro testified that he went to the worksite twice during the day of the incident. Ex. E to Farzam Decl., Dkt. 42-10 (Navarro Depo.) at 143:8-25). Marcello testified that he checked on Plaintiffs' progress once every two hours, which was approximately three to four times during any cleaning like the one at issue. Ex. F to Farzam Decl., Dkt. 42-11 (Marcello Depo.) at 49:19-50:4.

When Plaintiffs began vacuuming the trona with hoses, it was so hot that it caused them to melt. Plaintiffs' SSUF, Dkt. 42-1 at ¶ 5 (citing Ex. E to Farzam Decl., Dkt. 42-10 (Navarro Depo.) at 146:13-15; *id.* Ex. F, Dkt. 42-11 (Marcello Depo.) at 74:12-17; 78:2-3). Plaintiffs then used a metal hoe to dislodge the trona. *Id.* at ¶ 15 (citing Ex. A to Farzam Decl., Dkt. 42-6 (Garcia Depo.) at 102:1-103:2; *id.* Ex. B, Dkt. 42-7 (Perez Depo.) at 129:4-25). At the time of the cleaning, there was more trona than normal in both the reaction chamber and the Vertical. *Id.* at ¶ 6 (citing Ex. F to Farzan Decl., Dkt. 42-11 (Marcello Depo.) at 64:1-13).

Plaintiffs first vacuumed the bottom section of the reaction chamber, but did not complete their work in that area. They then vacuumed the top section. After completing that work, they resumed vacuuming the bottom section. Defendant's SUF, Dkt. 36-2 at ¶ 31 (citing Navarro Decl., Dkt. 36-3 at ¶ 14; Ex. B to Cidre Decl., Dkt. 36-6 (Perez Depo.) at 154:22-155:4; *id.* Ex. C (Garcia Depo. I) at 114:21-115:11, 125:1-17, 126:17-128:12; *id.* Ex. D (Deposition of Jose Garcia, Vol. II ("Garcia Depo. II")) at 244:12-246:22, 246:23-247:6; *id.* Ex. E (Workplace Accident Interview Questionnaire) at 79).

Plaintiffs' work involved going inside the reaction chamber to reach the areas that could not be accessed from the outside. Plaintiffs' SSUF, Dkt. 42-1 at ¶ 17 (citing Ex. A to Farzam Decl., Dkt. 42-6 (Garcia Depo.) at 130:7-134:15). Later in the cleaning process, as Plaintiffs were vacuuming the bottom portion of the Vertical, a section of trona dust that was stuck in the Vertical collapsed. *Id.* at ¶ 32 (citing Navarro Decl., Dkt. 36-3 at ¶ 14; Ex. B to Cidre Decl., Dkt. 36-6 (Perez Depo.) at 157:2-5; *id.* Ex. D (Deposition of Jose Garcia, Vol. II ("Garcia Depo. II")) at 247:17-22, 251:16- 252:15; *id.* Ex. E (Workplace Accident Interview Questionnaire) at 79). Plaintiffs state that immediately before the collapse, they heard a sound like a vibration or a "little boom." Plaintiffs' SSUF, Dkt. 42-1 at ¶ 24 (citing Ex. A to Farzam Decl., Dkt. 42-6 (Garcia Depo.) at 207:21-211:4-8; *id.* Ex. B, Dkt. 42-7 (Perez Depo.) at 157:6-15); *id.* Ex. C, Dkt. 42-8 (Declaration of Jose Garcia ("Garcia Decl.")); *id.* Ex. D, Dkt. 42-9 (Declaration of Jose Perez ("Perez Decl."))). Each Plaintiff sustained burn injuries due to the exposure to hot trona.

The California Department of Industrial Relations Division of Occupational Safety and Health ("Cal-OSHA") investigated the incident and issued a Notice of No Accident-Related Violation After Investigation. Defendant's SUF, Dkt. 36-2 at ¶ 35 (Ex. F to Cidre Decl., Dkt. 36-6 (Cal-OSHA notice)).

### B. Procedural Background

At the June 27, 2016 Initial Scheduling Conference, the deadline for amending pleadings was set for August 1, 2016. Dkt. 17. The fact discovery cut-off was set for March 17, 2017, and the last day to file motions was set for April 24, 2017. *Id.*

Defendant served interrogatories and requests for the production of document on Plaintiffs in August 2016. Declaration of Sarah D. Youngblood-Bates ("Youngblood-Bates Decl."), Dkt. 33-1 at ¶ 4. During that same month, Defendant subpoenaed records from Plaintiffs' employer. *Id.* The deposition of Perez

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

took place on September 16, 2016. *Id.* at ¶ 5. At that time, Perez testified that "Brian," who worked for Enviroserv, was responsible for directing workers on the day of the incident. Ex. A to Youngblood-Bates Decl., Dkt. 33-1 at 9 (Perez Depo. at 40:8-23). The deposition of Garcia took place on October 7, 2016. Youngblood-Bates Decl. at ¶ 6. Garcia also testified that Brian at "Environmental Services" was the supervisor when the incident took place. Ex. B to Youngblood-Bates Decl., Dkt. 33-1 at 12 (Garcia Depo. at 68:9).

Plaintiffs served interrogatories and document requests on Defendant on October 21, 2016. *Id.* at ¶ 12.

As an additional part of the discovery process, Defendant obtained Workplace Accident Interview Questionnaires from Cal-OSHA. Exs. C and D to Youngblood-Bates Decl., Dkt. 33-1 at 14-34. Garcia and Perez both listed "Brian" from Enviroserv as the contact person at the facility at which the incident occurred. *Id.* at 14, 24. The questionnaire as to Perez stated that he did not do any testing at the facility prior to the incident "because Brian was supposed to do it." Ex. C to Youngblood-Bates Decl., Dkt. 33-1 at 16. It also stated, "Brian was in charge but did not talk about hazards." *Id.* at 18.

### III.     Motion for Summary Judgment (Dkt. 36)

#### A.     Legal Standards

A motion for summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See id.* Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence of evidence to support the claims of the nonmoving party. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).

Only evidence that can be presented in an admissible form may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c). In considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. All inferences are to be drawn in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631-32 (9th Cir. 1987). However, conclusory or speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

### B. Application

#### 1. Background

Plaintiffs' Complaint sets forth a single cause of action. Complaint, Dkt. 1-1. It alleges that Defendant "so negligently maintained, controlled, managed, operated, inspected, and/or supervised [the] premises as to prevent foreseeable workers, such as Plaintiffs, from being exposed to perilous and unsafe conditions." *Id.* at ¶ 8. In support of this contention, the Complaint alleges that Defendant "created a dangerous condition and failed to warn Plaintiffs of the condition and further failed to eliminate the danger." *Id.* Further, it alleges that Defendant "failed to provide fireproof clothing for Plaintiffs to wear which would have protected them from harm." *Id.*

#### 2. Retained Control

The parties do not dispute that Plaintiffs were hired by Enviroserv, or that it contracted with Defendant to provide the cleaning services. Under California law, the general rule is that a party that hires a contractor to provide a service is not liable for injuries to the contractor's personnel that are the result of its failure to provide safe working conditions for them. *Privette v. Superior Court*, 5 Cal. 4th 689, 692 (1993); *see also SeaBright Ins. Co. v. US Airways, Inc.*, 52 Cal. 4th 590, 594 (2011) ("By hiring an independent contractor, the hirer implicitly delegates to the contractor any tort law duty it owes *to the contractor's employees* to ensure the safety of the specific workplace that is the subject of the contract.") (emphasis in original). *Privette* explained that

> when the person injured by negligently performed contracted work is one of the contractor's own employees, the injury is already compensable under the workers' compensation scheme and therefore the doctrine of peculiar risk should provide no tort remedy, for those same injuries, against the person who hired the independent contractor.

*Id.* at 696.[2] Thus, when "the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage, the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries." *Id.* at 702.

An exception to the *Privette* rule applies "when the party that hired the contractor (the hirer) failed to comply with workplace safety requirements concerning the precise subject matter of the contract, and the injury is alleged to have occurred as a consequence of that failure." *SeaBright*, 52 Cal. 4th at 594. "[A] hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite." *Hooker v. Dep't of Transp.*, 27 Cal. 4th 198, 202 (2002). However, "a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." *Id.* (emphasis in original).

In *Hooker*, a crane operator died after the machine he was operating tipped over. His surviving spouse sued the California Department of Transportation ("Caltrans"). *Id.* Caltrans had hired a general contractor

---

[2] There is no evidence in the record as to whether Plaintiffs made claims for, or received, worker's compensation benefits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

that employed the deceased. *Id.* The Caltrans construction manual provided that it was required to "obtain[ ] the Contractor's compliance with all safety laws and regulations," and to "*recognize and anticipate unsafe conditions* created by a Contractor's operation." *Id.* (emphasis in original). The evidence supported a finding that the crane had tipped over because the operator had retracted the outriggers before swinging the boom of the crane. *Id.* A witness from Caltrans testified that he knew that crane operators sometimes did so in order to allow other vehicles to pass by, and that such retraction left the crane unstable. *Id.* at 202-03.

*Hooker* concluded that "mere retention of the ability to control safety conditions is not enough" to impose liability on the hirer of a contractor. *Id.* at 209. Adopting the reasoning of a lower court, *Hooker* held that "[a] general contractor owes no duty of care to an employee of a subcontractor to prevent or correct unsafe procedures or practices to which the contractor did not contribute by direction, induced reliance, or other affirmative conduct." *Id.* (quoting *Kinney v. CSB Constr., Inc.*, 87 Cal. App. 4th 28, 39 (2001)).

The parties dispute whether Defendant engaged in conduct that affirmatively contributed to Plaintiffs' injuries. Plaintiff has presented evidence that supports a showing that employees of Defendant checked on the work that Plaintiffs were performing several times during the day that the incident occurred. Dkt. 42 at 10-11. However, this is not sufficient to prove liability based on affirmative conduct. Nor is the evidence presented by Plaintiffs that Defendant had a rigorous safety protocol for its own employees. *Id.* at 9-10.[3] As noted above, the "mere retention of the ability to control safety conditions is not enough." *Hooker*, 27 Cal. 4th at 209.

The cases cited by Plaintiff do not change this conclusion. For example, *Tverberg v. Fillner Const., Inc.*, 202 Cal. App. 4th 1439, 1446 (2012), repeated the principle, first established in *Hooker*, that "[t]he imposition of tort liability turns on whether the hirer exercised that retained control in a manner that *affirmatively contributed* to the injury." *Id.* (emphasis in original). In that case, the plaintiff was injured when he fell into a hole that another subcontractor had dug at the direction of the defendant. *Id. Tverberg* held that "passively permitting an unsafe condition to occur rather than directing it to occur does not constitute affirmative contribution." *Id.*[4] However, the court concluded that the plaintiff had presented evidence that the defendant had actively directed the digging of the hole. *Id.* at 1448. Similarly, *Regalado v. Callaghan*, 3 Cal. App. 5th 582 (2016) concluded that there was sufficient evidence to support the jury's conclusion that the failure of the defendant to obtain proper permitting for a propane line was a substantial factor in causing a propane explosion. *Id.* at 597. There is no evidence here that is comparable to what was presented in either of these cases. Indeed, the only evidence that employees of Defendant directed that work be performed in a particular manner is that Navarro and Marcello recommended that the Vertical be vacuumed from the top down. Defendant's SUF, Dkt. 36-2 at ¶ 25

---

[3] Plaintiffs attached the Declaration of Lewis Barbee to their Opposition to Defendant's Motion. Declaration of Lewis Barbe ("Barbe Decl."), Dkt. 42-4. Barbe is a licensed professional safety engineer and an employee of Occupational Safety and Health Services, Inc. *Id.* at ¶¶ 1, 3. He has taught safety engineering for organizations including the United States Department of Labor, the International Brotherhood of Electrical Workers and the University of California. *Id.* at ¶ 5. He opines that Defendant violated several known industry standards of care. However, industry safety standards and best practices are not determinative under the controlling legal framework for liability.

[4] Plaintiffs misstate this holding in their briefing. They argue that, in Tverberg, "summary judgment for defendant was reversed because the plaintiff had established that the defendant had engaged in 'passive permitting of an unsafe condition' as the 'act of directing that it occur' constituted 'active participation.'" Dkt. 42 at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

(citing Navarro Decl., Dkt. 36-3 at ¶ 9; Marcello Decl., Dkt. 36-4 at ¶ 7). This advice was not followed.

Although Plaintiffs did not address it in their Opposition, there is evidence that the sonic horn sounded on the day of the incident. Whether it could have done so, and thereby contributed to the release of the trona that caused the injuries to Plaintiffs, was discussed at length during the portion of the hearing addressing the Motion for Summary Judgment. Garcia submitted a declaration stating, "I heard the sound of a horn throughout the day before the hot trona fell on me." *Id.* at Ex. C to Farzam Decl., Dkt. 42-8 (Garcia Decl.) at ¶ 4. He also stated that "I would have testified that I heard the sound of a horn right before the hot trona fell on me." *Id.* at ¶ 5. He added: "I have also listened and watched a short video clip of a horn that sounded like the one at Owens. If asked, I will testify that the sound of this horn was like the horn I heard at Owens on the day when the hot trona fell on me." *Id.* at ¶ 6. Perez submitted a declaration that included the same statements. Ex. D to Farzam Decl., Dkt. 42-9 (Perez Decl.).[5]

There was also deposition testimony by each Plaintiff as to sounds and vibrations that he heard on the day of the incident. Garcia testified that he heard a sound "like vibration or like a little boom" before the incident. Ex. A to Farzam Decl., Dkt. 42-6 (Garcia Depo.) at 208:1-3. He stated that he heard the same sound three times that day prior to the incident. *Id.* at 208:14-18. Perez testified that, prior to the incident, he felt a vibration, "like some air that was released." Ex. B to Farzam Decl., Dkt. 42-7 (Garcia Depo.) at 157:8-15. He added that, immediately afterward, "the product from the other side fell down as if it had been let go." *Id.* Banuelos also testified that he heard the sonic horn two or three times on the date of the incident. Ex. G to Farzam Decl., Dkt. 42-12 (Deposition of Brian Banuelos ("Banuelos Depo.")) at 36:6-13. However, he did not see the reaction chamber vibrate. *Id.* at 36:22-37:2. Banuelos later stated that the horn sounded like an air horn, and that he was not sure if it was actually the sonic horn. *Id.* at 37:21-38:8.[6]

Defendant has provided evidence that the sounds described by Plaintiffs were not and could not have been the sonic horn. In a declaration, Navarro stated that he listened to the video clip of a horn that Garcia and Perez were provided. Second Navarro Decl., Dkt 43-3 at ¶ 11. He stated that the clip sounded nothing like the sonic horn, which is "more of a vibration than a sound." *Id.* Navarro also stated that

> [t]here are other horns and alarms that sound throughout the day at the Vernon plant. They sound less frequently than the reaction chamber sonic horns, as they are only used as needed. The horn that is usually used a few times a day is the horn that is used to call a foreman to the forming department ("foreman horn"). The foreman horn sounds like a lunch or end-of-shift horn (more akin to an airhorn).

*Id.* at ¶ 12. Marcello provided a declaration in which he made similar statements. Second Marcello Decl., Dkt. 43-4 at ¶¶ 18-19. Marcello also stated that it is not possible for the sonic horn to sound when the

---

[5] Both parties have submitted numerous evidentiary objections, including several as to these declarations. See Dkt. 43-6; 43-8. These objections are addressed in the orders filed concurrently with this one. Dkts. 50-52
[6] Plaintiffs' expert, Lewis Barbe, stated in his declaration that that the horns and vibrations that Plaintiffs reported hearing were "consistent" with sonic horns. Barbe Decl., Dkt. 42-4 at ¶¶ 31-32. He also stated: "I have reviewed a video clip of the sonic horn and listen [sic] to the sonic horn actual sounds [sic] when visiting the facility as used in an industrial setting for dislodging materials [sic], and I understand that the sound in this video clip was recognized by the plaintiffs as being consistent with the sounds that they heard on the date and just prior to their injuries. *Id.* at ¶ 33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

doors to the reaction chamber are open and the system is on bypass. *Id.* at ¶ 10.

Plaintiffs have not provided evidence sufficient to support an inference that the horn that Plaintiffs stated that they heard in their declarations sounded like the sonic horn at the Vernon facility. Neither Plaintiff knew what that sonic horn sounded like. They stated that they heard sounds on the day of the incident that sounded like sonic horn from a YouTube video clip provided by Plaintiffs' counsel. There is uncontroverted evidence from Navarro and Marcello that the sonic horn used by Defendant did not sound like the horn in the video clip. Further, there is uncontroverted evidence that other horns that did sound like the horn from the video clip sounded frequently at the Vernon facility. Those horns did not have anything to do with the reaction chamber.

However, Plaintiffs have provided other evidence that they heard or felt a vibration shortly before the incident. Defendant has submitted evidence that the sonic horn "use[s] vibration to loosen any dust that has become stuck to the sides of the reaction chamber." Second Navarro Decl., Dkt. 43-3 at ¶ 2. This could lead a reasonable factfinder to conclude that the vibration that the Plaintiffs heard was the sonic horn, and that the horn loosened the trona dust that had been stuck in the ductwork, causing it to fall on Plaintiffs.

As Defendant noted in its briefing and at hearing, it has provided evidence that the sonic horn could not have "sounded" while the system was on bypass. That was the setting at the time of the incident. Specifically, Marcello made the following statements with respect to this issue:

> Putting either reaction chamber on bypass not only slides the gates into place to block the flow of the flue gas, but also automatically disables the sonic horns for both reaction chambers. The reaction chamber that is not on bypass can continue to be used even without the sonic horns. The only way for the reaction chamber sonic horns to be reenergized is for the system to be taken off bypass.
>
> There is a secondary control panel for the reaction chamber sonic horns that is separate from the bypass controls. The purpose of the secondary control panel is to allow the sonic horns to be separately disabled while the system is online. If, however, the system is offline, as it is when placed on bypass, the secondary controls are not energized and therefore cannot be used to engage the sonic horns.

Second Marcello Decl., Dkt. 43-3 at ¶¶ 5-6. Defendant has also provided evidence that there was no gas flowing through the reaction chamber on the day of the incident. This evidence provides support for Defendant's claim that the sonic horn was not activated on the day of the incident.

Contrary to Defendant's position, however, the evidence it has presented that the reaction chamber was on bypass does not show the absence of a triable issue of fact. Rather, it shows that there is one. Defendant has presented evidence that the sonic horn could not have sounded on the day of the incident; Plaintiffs have presented evidence that it did so. Because evidence is not to be weighed on a motion for summary judgment, this competing evidence shows a triable issue of fact. Accordingly, the Motion for Summary Judgment is **DENIED** with respect to the assertion that Defendant retained control over the premises in a manner that actively contributed to Plaintiffs' injuries.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

   3.  <u>Failure to Warn</u>

Plaintiffs also argue that Defendant violated the duty to warn of known and knowable concealed hazards on the property. Dkt. 42 at 12. Pursuant to the general principles of premises liability, landowners are required to "maintain land in their possession and control in a reasonably safe condition." *Alcaraz v. Vece*, 14 Cal. 4th 1149, 1156 (1997). As the California Supreme Court has determined:

> A landowner that hires an independent contractor may be liable to the contractor's employee if the following conditions are present: [(i)] the landowner knew, or should have known, of a latent or concealed preexisting hazardous condition on its property, [(ii)] the contractor did not know and could not have reasonably discovered this hazardous condition, and [(iii)] the landowner failed to warn the contractor about this condition.

*Kinsman v. Unocal Corp.*, 37 Cal. 4th 659, 664 (2005).

Plaintiffs' failure to warn argument is foreclosed by *Kinsman*. There is no evidence supporting the conclusion that "the contractor did not know and could not have reasonably discovered [the] hazardous condition" of the hot trona. *Id*. Enviroserv was hired to remove the trona. Thus, Plaintiffs cannot claim that they or Enviroserv were unaware of the trona itself. Moreover, the trona was so hot that it melted the hoses of the vacuums Plaintiffs tried to use to extract it. This occurred well before the incident at issue. Plaintiffs' SSUF, Dkt. 42-1 at ¶ 5 (citing Ex. E to Farzam Decl., Dkt. 42-10 (Navarro Depo.) at 146:13-15; *id*. Ex. F, Dkt. 42-11 (Marcello Depo.) at 74:12-17; 78:2-3). This would have alerted a reasonable person that the trona presented a hazard. Further, Navarro and Marcello recommended that the Vertical be vacuumed from the top down. Defendant's SUF, Dkt. 36-2 at ¶ 25 (citing Navarro Decl., Dkt. 36-3 at ¶ 9; Marcello Decl., Dkt. 36-4 at ¶ 7). This provides some evidence that they attempted to warn Enviroserv of the specific hazard presented by attempting to extract the trona from the bottom of the Vertical. In light of these facts, no reasonable factfinder could conclude that there was a failure to warn of a concealed hazard.

  **C.**  **Conclusion**

For the reasons stated in this Order, the Motion for Summary Judgment is **DENIED IN PART**. Summary judgment is **GRANTED** as to Plaintiffs' failure to warn theory and denied as to all other grounds.

**IV.**  **<u>Motion for Leave to Amend (Dkt. 29)</u>**

  **A.**  **Legal Standards**

Fed. R. Civ. P. 15(a)(1) provides that a party may amend its pleading once as a matter of course within 21 days of serving it, or if the pleading is one for which a responsive pleading is required, 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f). In all other cases, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. However, "[o]nce the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings that rule's standards control[s]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16 provides, in relevant part, "[a] schedule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The "'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. Thus, "[t]he pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609).

Generally, if a party seeking to amend the scheduling order can show good cause, the court may then assess whether amendment is merited under Rule 15(a)(2). As noted above, that rule provides that leave should be freely given when justice so requires. The Supreme Court has explained this standard:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). This liberality is "subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice, is not sought in bad faith, and does not constitute an exercise in futility." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal citations omitted).

A different standard applies where a plaintiff seeks to amend an action that has been removed by adding a party whose presence would destroy diversity jurisdiction. *See Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 n.2 (C.D. Cal. 2002) ("Although the permissive standard of Federal Rule of Civil Procedure 15(a) allows for amendment as a matter of course prior to the service of a responsive pleading, Fed.R.Civ.P. [sic] 15(a), the Court determines that the proper standard for deciding whether to allow post-removal joinder of a diversity-destroying defendant is set forth in 28 U.S.C. § 1447(e)."). Under such circumstances, "the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447. This standard allows the court more discretion than the standard under Rule 15(a). *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1082 (C.D. Cal. 1999).

Section 1447(e) "does not state the factors to be considered when making a determination of whether joinder should be permitted or denied." *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1278 (C.D. Cal. 2015). In applying the statute, courts have considered the following:

> 1. whether the party sought to be joined is needed for just adjudication and would be joined under Fed.R.Civ.P. [sic] 19(a);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

2. whether the statute of limitations would prevent the filing of a new action against the new defendant should the court deny joinder;

3. whether there has been unexplained delay in seeking the joinder;

4. whether the joinder is solely for the purpose of defeating federal jurisdiction;

5. whether the claim against the new party seems valid;

6. the possible prejudice that may result to any of the parties in the litigation;

7. the closeness of the relationship between the new and the old parties;

8. the effect of an amendment on the court's jurisdiction; and

9. the new party's notice of the pending action.

*Id.* (citing *Hardin v. Wal–Mart Stores, Inc.*, 813 F. Supp. 2d 1167, 1173-74 (E.D. Cal.2011); *Oum v. Rite Aid Corp.*, No. CV08-7741-GHK, 2009 WL 151510, at *1 (C.D. Cal. Jan. 20, 2009)).

### B. Application

Because the Motion for Leave to Amend must be evaluated under § 1447(e), the factors identified in *Murphy* are considered.

#### 1. Whether the Party to Be Joined Is Needed for Just Adjudication and Would be Joined under Fed. R. Civ. P. 19(a)

Defendant argues that Enviroserv is not a necessary party under Rule 19(a). That Rule provides that a

> person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Fed. R. Civ. P. 19(a)(1). Joinder may not be necessary if the joined party would destroy subject matter jurisdiction. *Murphy*, 74 F. Supp. 3d at 1282.

Defendant argues that Plaintiffs' claim can be "fully and finally resolved . . . without leaving any party subject to inconsistent obligations." Dkt. 33 at 14. Plaintiffs respond that having two separate proceedings would "create a possibility of conflicting rulings on a common issue of law or fact." Dkt. 35 at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

"Complete relief 'is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action.'" *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 139 F. Supp. 3d 1141, 1150 (E.D. Cal. 2015) (quoting *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013)). Failure to join Enviroserv could lead to a separate action in the Superior Court arising out of Plaintiffs' claims of negligence. However, if Defendant in this action is found to have been negligent, nothing precludes Plaintiffs from recovering the full amount of damages requested in the Complaint, even if Enviroserv is not a party. Conversely, if Defendant is found not to have been negligent, Plaintiffs can still seek to recover from Enviroserv in a separate action, subject to any determination as to claims preclusion.

Further, Enviroserv has not attempted to claim an interest relating to the subject of the action. The Ninth Circuit has found that such a failure may make joinder under Rule 19(a)(1)(B) unnecessary. *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999); *see also Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983) (subparts (i) and (ii) of Rule 19(a)(1)(B) "are contingent . . . upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action").

### 2. Whether the Statute of Limitations Would Prevent the Filing of a New Action

The incident at issue occurred on January 22, 2016. Under California law, the statute of limitations for personal injury claims is two years. Cal. Code Civ. Proc. § 335.1 (two-year statute of limitations for actions for "injury to . . . an individual caused by the wrongful act or neglect of another"). Thus, January 22, 2018 is the earliest date on which the statute of limitations will run on Plaintiffs' claims, assuming no form of tolling applies.

### 3. Whether There Was Unexplained Delay in Seeking the Joinder

Defendant argues that there is no explanation for Plaintiffs' delay in seeking to add Enviroserv as a defendant. Dkt. 33 at 6. It argues that, at least as early as their interviews with Cal-OSHA in spring of 2016, Plaintiffs knew or had reason to know that Enviroserv supervised them on the day of the incident. *Id.* at 7. Further, each Plaintiff testified in the fall of 2016, that he understood that Enviroserv was in charge of the work being completed. *Id.* Defendant also cites the Joint Rule 16(b)/26(f) Report filed on June 17, 2016, in which Defendant asserted: "Owens-Brockway engaged a third-party independent contractor to clean a section of ductwork located at Owens-Brockway's Vernon, California facility. The third-party independent contractor was responsible for supplying the appropriate equipment and labor." Dkt. 15 at 2. It also cites its initial disclosures, which referenced the "third-party independent contractor that Owens-Brockway engaged to clean the area Plaintiffs were cleaning at the time of the incident," (Ex. E to Youngblood-Bates Decl., Dkt. 33-1 at 38), and to a conversation with Plaintiff's attorney in August 2016, in which he stated that he understood that Defendant intended to pursue the complete defense that it hired an independent contractor. Youngblood-Bates Decl. at ¶ 10.

Defendant also argues that Plaintiffs did not proceed in a timely manner in seeking discovery. It claims that Plaintiffs did not serve any form of written discovery until October 21, 2016, which was several months after the Rule 16(f) conference that marked the start of the discovery period. Dkt. 33 at 9. Defendant adds that, as of the filing date of the Opposition, Plaintiffs had not taken any depositions. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

(citing Youngblood-Bates Decl., Dkt. 33-1 at ¶ 12).

Plaintiffs respond that they acted in good faith in seeking to amend the Complaint. Dkt. 29 at 7. They argue that they waited to add Enviroserv because they were "waiting for the results of preliminary discovery and mediation with Defendant." *Id*. at 3. They also state that "preliminary discovery and discussion . . . during the parties' recent mediation has now revealed a potential new defendant." *Id*. at 5.[7] Specifically, they contend that "Plaintiff discovered that this new defendant, USA Waste Management of California dba Enviroserv, was retained and/or hired by Defendant OWENS-ILLINOIS, INC. to clean, service, maintain, supervise and/or operate the commercial ovens[8] owned and controlled by Defendant OWENS-ILLINOIS, INC." *Id*. They add that "[e]vidence exists that this company either knew or had information about the safety failures at defendant's facility and did nothing to either remedy or improve same, [sic] failed to warn or enforce security measures at the facility." *Id*. They state that they "propounded discovery on Defendant at the earliest opportunity." *Id*. at 6.

In determining whether there was "unexplained delay," "courts must consider whether the 'moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'" *Murphy*, 74 F. Supp. 3d at 1284. Plaintiffs' explanation for the delay here is that discovery and mediation revealed that Enviroserv was hired by Defendant to clean the reaction chamber where the incident took place. This argument is not persuasive in light of Plaintiffs' statements in their interviews with Cal-OSHA and their deposition testimony that they were supervised by "Brian" of Enviroserv. These statements show that Plaintiffs knew or had reason to know of Enviroserv's involvement in the incident long before the last day to add parties.

The conclusory statement that "evidence exists" that Enviroserv knew or had information about the safety failures at Defendant's facility does not change this conclusion. Among other things, there is no statement about the content of such evidence and why it provides information the Plaintiffs could not have known earlier.

### 4. Whether Joinder is Solely for the Purpose of Defeating Federal Jurisdiction

Defendant argues that Plaintiff's requested amendment would destroy diversity jurisdiction. Dkt. 33 at 12. It also notes that Plaintiffs already attempted to return the case to the Superior Court when they filed a Motion to Remand that was denied. *Id*. at 13.

Plaintiffs acknowledge that courts "consider whether the proposed amendment is interposed for some improper purpose, such as to affect the Court's jurisdiction or for reasons of litigation tactics." Dkt. 29 at 6 (citing Wright & Miller, Federal Practice and Procedure, §1487). They contend that the proposed amendment "will not affect this Court's jurisdiction over this matter," and argue that "if Plaintiffs had sought some tactical advantage through amendment, it hardly would have explained, in advance, the potential for the amendment to both Defendant OWENS-ILLINOIS, INC. and the Court from the outset of

---

[7] Defendant objects to Plaintiff's reference to discussions that took place during mediation. Under Fed. R. Evid. 408(a), "conduct or a statement made during compromise negotiations about the claim" cannot be admissible either to prove or disprove the validity or amount of a disputed claim. However, the court "may admit this evidence for another purpose, such as . . . negating a contention of undue delay." Fed R. Evid. 408(b).

[8] The Complaint and proposed FAC refer to the reaction chamber as "ovens."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

this case." *Id.* at 7. In support of this argument, Plaintiffs note that they included Doe defendants in the Complaint. *Id.*

Plaintiffs also rely on the following statement in the Rule 26(f) report:

> Plaintiffs expect to amend their complaint to add additional defendants, including the Owens employees who created and contributed to the dangerous condition. Plaintiffs will do so once the identity of those employees is revealed through the course of discovery. Given the location of the incident, which was within California, at least one of those Owens employees will almost certainly be a California citizen, thereby defeating diversity.

Dkt. 15 at 4.

Plaintiffs' are incorrect in asserting that the proposed amendment will not affect jurisdiction. If allowed, it would. The proposed FAC alleges that Enviroserv is a corporation operating and doing business in California. Dkt. 29-2 at 1-2. It does not specify where Enviroserv is incorporated or the location of its "nerve center." However, Defendant has submitted evidence that Enviroserv is a California corporation. Ex. I to Youngblood-Bates Decl., Dkt. 33-1 at 65 (California Business Search Entity Detail for Environmental Recovery Services, Inc.). Therefore, amendment would destroy complete diversity because both Plaintiffs and Enviroserv are citizens of the same state.

Further, the statement Plaintiffs made in their Rule 26(f) report did not make clear that Enviroserv would be added as a defendant. It did, however, demonstrate Plaintiffs' understanding that the addition of a non-diverse defendant would require remand.

Given these facts, Defendant has "raised concerns as to whether the claims are valid, or instead asserted for the purpose of defeating diversity jurisdiction." *Murphy*, 74 F. Supp. 3d at 1286.

### 5. Validity of the New Claim

Defendant does not argue that the proposed claim is invalid. Plaintiff argues that the allegations of the FAC, if proven, would make "USA Waste Management of California dba Enviroserv liable for contributory liability, at the least." Dkt. 29 at 3.

Under California law, negligence "consists of a failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm." *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 753-54 (2007).[9] The legal elements of such a claim are: "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate*

---

[9] Plaintiffs state that "[l]iability for negligence lies where a party 'knowingly contributes to the dangerous condition.'" Dkt. 29 at 9 (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)). *Fonovisa* involved claims of copyright infringement action and did not address negligence. Its language closest to what the Plaintiffs' quote is: "Contributory infringement has been described as an outgrowth of enterprise liability, *see* 3 Nimmer § 1204[a] [2] at 1275; *Demetriades v. Kaufmann*, 690 F.Supp. 289, 292 (S.D.N.Y.1988), and imposes liability where one person knowingly contributes to the infringing conduct of another." *Fonovisa*, 76 F.3d at 264. This standard does not apply to the tort of negligence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

*or legal cause* of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996) (quoting *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 834 (1992) (emphasis in original)).

The proposed FAC does not substantively change the allegations as to the basis for liability of the Defendant stated in the Complaint. FAC, Dkt. 29-2. Thus, the proposed FAC states that Enviroserv was "retained or hired by Defendant OWENS-ILLINOIS, INC. to clean, service, maintain, supervise and/or operate the commercial ovens owned and controlled by Defendant OWENS-ILLINOIS, INC." FAC at ¶ 7. It alleges that "Defendants so negligently maintained, controlled, managed, operated, inspected, serviced, repaired, cleaned and\or supervised said premises as to prevent foreseeable workers, such as Plaintiffs, from being exposed to perilous and unsafe conditions." *Id.* at ¶ 8. It further alleges that "Defendants negligently failed to take steps to either make the condition safe or warn the Plaintiffs of the dangerous condition, thereby causing the hereinafter-described injuries and damages to the Plaintiffs." *Id.* at ¶ 10.

The allegations in the proposed FAC are conclusory as to the alleged negligence of Enviroserv. Thus, no negligence is attributed specifically to Enviroserv. The proposed FAC states that the reaction chamber was "owned and controlled" by Defendant. *Id.* at ¶ 7. There is no non-conclusory allegation that Enviroserv shared control over the reaction chamber, or that it had reason to know that the reaction chamber presented a safety hazard.

There is, however, some evidence that was presented in connection with the Motion for Summary Judgment, that Enviroserv had reason to know that the reaction chamber presented a safety hazard. For example, Banuelos, who was then an Enviroserv employee, completed the confined space entry permit provided by Defendant. *See* Defendant's SUF, Dkt. 36-1 at ¶ 19 (citing Navarro Decl., Dkt. 36-3 at ¶¶ 9, 11; *id.* Ex. F (Confined Space Entry Permit) at 51-52; Marcello Decl., Dkt. 36-4 at ¶ 3). Banuelos also accompanied employees of Defendant on a walkthrough of the Vernon facility on the date of the incident. *Id.* at ¶ 24 (citing Marcello Decl., Dkt. 36-4 at ¶ 6). Further, Banuelos discussed the scope of the work to be performed with employees of Defendant. *Id.* at ¶ 25 (citing Navarro Decl., Dkt. 36-3 at ¶ 9; Marcello Decl., Dkt. 36-4 at ¶ 7). He also gave Plaintiffs the direction to start working. *Id.* at ¶ 26 (citing Ex. B to Cidre Decl., Dkt. 36-6 (Perez Depo.) at 132:2-14, 150:8-13); *id.* Ex. C (Garcia Depo. I) at 113:16-21).

      6.      <u>Possible Prejudice to Any Party</u>

Defendant argues that it would be prejudiced by the addition of Enviroserv as a result of the advanced stage of discovery. Dkt. 33 at 10-11. Defendant notes that, as of the filing of the Motion, the non-expert discovery cut-off in this case was March 17, 2017, and initial expert disclosures were due by April 3, 2017. *Id.* at 10. In an Order issued on February 1, 2017, the non-expert discovery cut-off was continued until May 12, 2017 and the deadline for initial expert disclosures was continued to May 26, 2017. Dkt. 34. These deadlines have been extended again since that time. Dkts. 40, 46. The current deadlines are September 5, 2017 for non-expert discovery, October 16, 2017 for expert discovery, September 18, 2017 for initial expert disclosures and October 2, 2017 for rebuttal expert disclosures. Dkt. 46.

Defendant notes that written discovery requests were served on Plaintiffs in August 2016. Dkt. 33 at 11. The deposition of Perez has been completed, and about one-half of Garcia's deposition has been completed. *Id.* Defendant argues that adding Enviroserv at this stage would delay proceedings and require additional discovery. *Id.* Defendant also argues that denial of amendment would not prejudice

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

Plaintiffs because the statute of limitations on their claim against Enviroserv has not run. *Id*. at 13. Defendant argues that any burden on Plaintiffs that might result from having two simultaneous actions pending could be addressed by having one action proceed while the other is stayed. *Id*. at 14.

Plaintiffs respond that "[d]iscovery is still at an early stage in this case." Dkt. 29 at 3. Thus, they contend that Defendant cannot show prejudice. Further, they argue that amending the Complaint to add Enviroserv as a defendant would ensure that the action is "litigated in an efficient and non-duplicative manner." *Id*. at 4. Plaintiffs also argue that, "[g]iven the early stage of the case and Plaintiffs' express reservation of its right to amend, Defendant can point to no unfair prejudice that will result from the Court's granting of the instant motion. *Id*. at 8. In support of their position that Defendant will not be prejudiced by the addition of Enviroserv, Plaintiffs cite *ABM Indus., Inc. v. Zurich Am. Ins. Co.*, 237 F.R.D. 225 (N.D. Cal. 2006). There, the parties had conducted "virtually no discovery." *Id*. at 226. Only the plaintiffs had noticed depositions and no depositions had been conducted. *Id*. The court then granted the plaintiff's motion for leave to file an amended complaint. *Id*.

Here, the discovery period commenced in June 2016. However, non-expert discovery does not end until September 5, 2017, and expert discovery does not end until October 16, 2017. In a stipulation filed on May 22, 2017, the parties represented that they still need to conduct approximately ten fact depositions, including of "key liability and damages witnesses." Dkt. 44 at 3. They also stated that they still need to issue and serve third-party subpoenas. *Id*. They stated that additional fact discovery is necessary before each side can identify experts and disclose their reports. *Id*.

Based on the foregoing, substantial discovery remains to be conducted. This supports a finding that Defendant will not be substantially prejudiced if amendment is allowed. Further, Plaintiffs may suffer prejudice if leave to amend is denied. "[C]ourts have considered whether denial of leave to amend would require parallel in state and federal court proceedings or would lead the plaintiff to forgo claims against the non-diverse defendants." *Murphy*, 74 F. Supp. 3d at 1286. Here, denial of leave to amend is likely to result in a parallel proceeding against Enviroserv in state court.

### 7. Relationship Between the New and the Old Parties

Defendant states that "Owens-Brockway and Waste Management are entirely different companies that have no overlap in management or employees." Dkt. 33 at 15 (citing Youngblood-Bates Decl., Dkt. 33-1 at ¶ 14). The two companies "merely engaged in an arms-length transaction for the work that was being performed at the time that Plaintiffs were injured." *Id*. Plaintiff does not make any representation as to the relationship between Defendant and Enviroserv. Thus, this factor weighs against allowing amendment.

### 8. Effect of Amendment on Jurisdiction

As stated above, the addition of Enviroserv as a defendant in this action would destroy complete diversity and require remand.

### 9. New Party's Notice of Pending Action

There is no showing that Enviroserv is aware of the pending action. It has not participated in the action and has not received formal notice. However, as a matter of common sense, it is reasonable to assume

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-01889 JAK (RAOx) | Date | July 13, 2017 |
|---|---|---|---|
| Title | Jose Manuel Garcia, Jr., et al. v. Owens-Brockway Glass Container Inc., et al. | | |

that it is aware of the proceedings inasmuch as they concern a contract pursuant to which it was providing services to Defendant. On this issue, it is also significant that Banuelos, an employee of Enviroserv, was deposed as a part of the proceedings in this action.

* * *

The *Murphy* factors are largely neutral, or weigh in favor of granting leave to amend. Plaintiffs have stated a reasonable basis for the allegations that support their claim against Enviroserv. They would be prejudiced if required to pursue parallel actions against Defendant here and against Enviroserv in the Superior Court. Not only would more work be required if neither action is stayed, but there is also the risk of duplicative litigation on many matters at greater expense to the parties. In contrast, there is little prejudice to Defendant that would result from allowing the amendment. Further, it serves the interests of judicial efficiency to pursue all of Plaintiffs' claims with respect to the incident in a single court. For these reasons, the Motion to Amend is **GRANTED**.

**V.     Conclusion**

Defendant's Motion for Summary Judgment is **DENIED IN PART** and Plaintiffs' Motion to Amend the Complaint is **GRANTED**. Because there is no longer jurisdiction over this matter, it is **REMANDED** to the Los Angeles Superior Court at its Stanley Mosk Courthouse.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |